UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| CANTU ENTERPRISES HOLDINGS, LLC, | § § § | |
|---|---|---|
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 3:15-CV-0327-B |
| AWESOME PEST CONTROL, LLC, ANNA WARNER, and JERRY GUINN WHITE, | § § § § § | |
| Defendants. | § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Cantu Enterprises Holdings, LLC's ("Cantu") Motion to Dismiss (the "Motion"), filed April 6, 2015. Doc. 11. Cantu request that the Court dismiss Defendant Jerry Guinn White's counterclaim for a declaratory judgment pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. For the reasons that follow, the Court concludes that the Motion should be, and hereby is, **GRANTED**.

## I.

## BACKGROUND

This is an action for breach of a non-compete agreement. White is an employee of JWW Services, Inc. ("JWW"), which is a corporation he owns. Doc. 5, White's Original Answer, Affirmative Defenses, and Counterclaim ("Counterclaim") ¶ 58. For 28 years, JWW performed pest control services as an independent contractor of Denco Pest Control ("Denco"). *Id.*

On or about March 3, 2014, Cantu acquired Denco by purchasing all of its assets and

merging operations. Doc. 1, Complaint ¶ 8. Upon acquiring Denco, Cantu asked White to sign an Employment Agreement. Counterclaim ¶ 59. Cantu told White that an Employment Agreement was required, but that the relationship White had with Denco (through JWW) would remain intact and that everything would remain the same, including the manner in which White performed services and the compensation paid to JWW. *Id.*

Based on these representations, White signed a document entitled "Employment Agreement." *Id.* ¶ 60. After signing the Agreement, however, White continued to provide services to Cantu as an employee of JWW, an independent contractor of Cantu. *Id.* Cantu made all payments to JWW. *Id.* Cantu withheld no taxes, FICA or Medicare contributions from any payments made to JWW. *Id.* It also issued a Form 1099 to JWW. *Id.*

Some time later, Cantu told White that the relationship would remain the same for 90 days and then it would change. *Id.* ¶ 62. Because White did not agree to Cantu's proposed terms for the change in the relationship, White terminated his independent contractor relationship with Cantu on May 9, 2014. *Id.* ¶ 62.

Thereafter, on February 2, 2015, Cantu sued White for violating a non-compete clause contained in the Employment Agreement.[1] According to Cantu, White left Cantu on or about May 12, 2014 to start a new enterprise called Awesome Pest Control, LLC ("Awesome"), along with co-Defendant Anna Warner. Compl. ¶ 15. "Not only did Defendants begin to actively compete with Cantu in its service areas, Defendants also began soliciting business from individuals and entities on Cantu's customer list, and were successful in having former Cantu customers switch to Defendants."

---

[1] Cantu asserts claims for breach of contract, misappropriation of trade secrets, tortious interference with prospective business relationship, and breach of fiduciary duty. Compl. ¶¶ 24–36.

*Id.* ¶ 18.

In response to Cantu's lawsuit, White filed a counterclaim for declaratory relief under 28 U.S.C. §§ 2201 and 2202. Specifically, White asks the Court to declare: (1) White was never an employee of Cantu; (2) all of White's services to Cantu were provided as an independent contractor through JWW; (3) White is not bound by the terms of the Employment Agreement he signed after being told by Cantu to sign such an agreement because White was never hired by Cantu as an employee; (4) White received no confidential information from Cantu while performing services as an independent contractor; and (5) there are no restrictive covenants in existence between White and/or JWW and Cantu. Counterclaim ¶ 65.

Cantu now moves to dismiss White's counterclaim for a declaratory judgment on the grounds that it is redundant of Cantu's damages claims.

## II.

## LEGAL STANDARD

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) authorizes the court to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). The court will "not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts." *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert.*

*denied*, 530 U.S. 1229 (2000).

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* When well-pleaded facts fail to achieve this plausibility standard, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks and alterations omitted).

## III.

## ANALYSIS

Under 28 U.S.C. § 2201, the Court has broad discretion in determining whether to entertain a declaratory judgment action. *Winton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995) (noting that the Declaratory Judgment Act is "an enabling Act, which confers discretion on the courts rather than an absolute right upon the litigant."). Although a court may not dismiss a request for declaratory relief "on the basis of whim or personal disinclination . . . the court may consider a variety of factors in determining whether to decide a declaratory judgment suit." *Rowan Cos., Inc. v. Griffin*, 876 F.2d 26, 28-29 (5th Cir.1989). If a request for a declaratory judgment adds nothing to an existing lawsuit, it need not be permitted. See *Pan-Islamic Corp. v. Exxon Corp.*, 632 F.2d 539, 546 (5th Cir.1980) (affirming refusal to allow leave to add claims that were adequately raised in the original complaint);

*Mandry v. Fina Oil & Chemical Co.*, 44 F.3d 1004, 1994 WL 733494 at *2 (5th Cir.1994) (reversing award of declaratory relief where "[t]he declaratory judgment d[id] not declare any significant rights not already at issue in the contract dispute."). Thus, under Rule 12(b)(6), courts regularly reject declaratory judgment claims that seek resolution of matters that will already be resolved as part of the claims in the lawsuit. *See, e.g., Regus Mgmt. Grp., LLC, v. Int'l Bus. Mach. Corp.*, No. CIV.A.3:07-CV-1799-B, 2008 WL 2434245, at *3 (N.D. Tex. June 17, 2008) (dismissing declaratory judgment claims as unnecessary and repetitive); *Xtria LLC v. Tracking Sys., Inc.*, No. 3:07-CV-0160, 2007 WL 1791252, at *3 (N.D. Tex. Jun. 21, 2007) (dismissing declaratory judgment action under Rule 12(b)(6) where it duplicated an existing breach of contract claim); *Assistmed, Inc. v. Conceptual Health Solutions, Inc.*, No. 3:05-CV-0880, 2006 WL 3691003, at *17 (N.D. Tex. Dec.14, 2006) (same).

White concedes that there is some level of overlap between his counterclaim for declaratory relief and Cantu's claims, but argues that his claim raises key issues not raised by Cantu's—in particular, whether he was, in fact, an employee of Cantu or merely an independent contractor employed by JWW and whether there are any restrictive covenants between White and/or JWW and Cantu. Doc. 13, Def.'s Resp. Br. 9–10. Contrary to White's contention, however, the Court will necessarily have to determine White's employment status with Cantu in order to resolve Cantu's breach of contract and fiduciary duty claims.

To prevail on its breach of contract claim, Cantu will have to show: (1) the Employment Agreement White signed was valid; (2) Cantu performed under the contract; (3) White breached the non-compete provision; and (4) damages. *See Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (reciting elements of breach of contract claim). White's employment status will

be critical to resolving these questions, because if Cantu never hired White as an employee, then its ability to enforce the non-compete clause in the Employment Agreement is called into question. *See id.* (performance under the contract is an essential element of a breach of contract claim). Likewise, Cantu's breach of fiduciary duty claim is dependent on White owing Cantu a fiduciary duty as an employee of the company. *See Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 202 (Tex. 2002) (stating that "an at-will employee breaches his fiduciary duty to his or her employer, if during his or her employment, he or she: 1) misappropriates the employer's trade secrets; (2) solicits the employer's customers while still working for the employer; (3) solicits the departure of other employees while still working for the employer; or (4) carries away confidential information"). Thus, a declaration of White's employment status appears entirely repetitive and unnecessary. *Regus Mgmt. Grp.*, 2008 WL 2434245, at *3.

Meanwhile, a declaration that there are no restrictive covenants between Cantu and JWW would serve no useful purpose because nowhere has Cantu claimed that any such covenants exist. *Cf. Concise Oil & Gas P'ship v. La. Intrastate Gas Corp.*, 986 F.2d 1463, 1471 (5th Cir. 1993) (observing that declaratory judgments are favored "when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue") (internal quotations and citations omitted). Accordingly, the Court will not entertain White's counterclaim for a declaratory judgment.

## IV.

## CONCLUSION

For the aforementioned reasons, the Court **GRANTS** Cantu's Motion to Dismiss (doc. 11) and **ORDERS** Cantu's counterclaim **dismissed without prejudice**.

SO ORDERED.

SIGNED: August 6, 2015.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE